# STATE OF LOUISIANA
## COURT OF APPEAL, THIRD CIRCUIT

## 06-1247


STATE OF LOUISIANA

VERSUS

HENRIETTA WILLIAMS


************

APPEAL FROM THE
SEVENTH JUDICIAL DISTRICT COURT,
PARISH OF CONCORDIA, NO. 06-021MH,
HONORABLE SHARON MARCHMAN, DISTRICT JUDGE

************

## MICHAEL G. SULLIVAN
## JUDGE

************

Court composed of Ulysses Gene Thibodeaux, Chief Judge, Oswald A. Decuir, and Michael G. Sullivan, Judges.


**CONVICTION AFFIRMED; SENTENCE VACATED; AND REMANDED WITH INSTRUCTIONS.**

**John Frederick Johnson**
**District Attorney**
**4001 Carter Street, Suite 9**
**Vidalia, Louisiana  71373**
**(318) 336-5526**
**Counsel for:**
       **State of Louisiana**

**Charles C. Foti, Jr.**
**Attorney General**
**Molly L. Balfour**
**Assistant Attorney General**
**Post Office Box 94005**
**Baton Rouge, Louisiana  70804**
**(225) 326-6200**
**Counsel for:**
       **State of Louisiana**

**Raymond Lee Cannon**
**Attorney at Law**
**Post Office Box 1108**
**Tallulah, Louisiana  71282-1108**
**(318) 574-2500**
**Counsel for Defendant/Appellant:**
     **Henrietta Williams**

**Butch Wilson**
**Assistant Attorney General**
**Post Office Box 2391**
**Baton Rouge, Louisiana  70821**
**(225) 326-6000**
**Counsel for:**
     **State of Louisiana**

SULLIVAN, Judge.

On March 3, 2006, the Attorney General's Office filed a bill of information in Concordia Parish charging Henrietta Williams (hereinafter "Defendant") with filing a false public record, i.e., a false absentee ballot affidavit, in violation of La.R.S. 14:133. Following a jury trial on March 9, 2006, Defendant was found guilty as charged.

On May 19, 2006, the trial court heard and denied Defendant's motions for arrest of judgment, post verdict judgment of acquittal, and new trial. Defendant then waived sentencing delays, and the trial court sentenced her to five years at hard labor, with all but eighteen months suspended, and five years of supervised probation. Defendant filed a motion to reconsider the sentence, which the trial court heard and denied on July 7, 2006.

Defendant now seeks review by this court, assigning five errors. For the following reasons, we affirm Defendant's conviction, but we vacate Defendant's sentence and remand with instructions.

**Facts**

On April 1, 2004, while at the home of Maud Williams (hereinafter "Ms. Williams") in Ferriday, Louisiana, Defendant helped Ms. Williams fill out an absentee voting ballot. Ms. Williams' two adult granddaughters, Renasha Reed and Felicia Williams, were also at the residence, and Defendant asked them to sign as witnesses to Ms. Williams' signature on the "affidavit flap" of the mail-in ballot's envelope. The granddaughters refused because they had heard Defendant telling Ms. Williams for whom to vote.

Defendant became upset and left with the ballot envelope and ballot. She then visited the homes of Shirley Mason and Eloise Polk, asking each of them to sign as

witnesses, which they did. The Registrar of Voters for Concordia Parish received the absentee ballot in Ms. Williams' name the next day, April 2, 2004.

## Errors Patent

In accordance with La.Code Crim.P. art. 920, this court reviews all appeals for errors patent on the face of the record. After reviewing the record, we find that the court minutes of trial require correction.

First, the court minutes indicate that the alternate juror was excused prior to the jury retiring for deliberation; however, the minutes then list the alternate juror's vote during polling. The trial transcript confirms that the alternate juror was released prior to deliberations and was not polled with the other jurors. Second, there is a discrepancy between the minutes and the transcript as to which trial court judge presided over the reconsideration hearing.[1] Accordingly, we will remand with instructions that the trial court correct the court minutes to reflect that the alternate juror was not polled and to identify which judge presided over the reconsideration hearing.

## Assignment of Error No. 2

Although Defendant's brief combines her second assignment of error with her fourth, we will address it separately, as it challenges the sufficiency of the evidence. Such an argument must be addressed first on appellate review, since a holding that the evidence was insufficient would necessitate an acquittal. *State v. Hearold*, 603 So.2d 731 (La.1992).

The analysis for sufficiency reviews is well-settled, as this court has explained:

---

[1]The minutes reflect that Judge Sharon Marchman, who conducted the trial, also presided at the reconsideration hearing, whereas the transcript suggests that Judge Kathy Johnson presided over that hearing. Although the transcript normally controls in such conflicts, some of the discussion during the hearing suggests that the judge at the hearing had presided over earlier proceedings.

2

When the issue of sufficiency of evidence is raised on appeal, the critical inquiry of the reviewing court is whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt. *Jackson v. Virginia*, 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560, *rehearing denied*, 444 U.S. 890, 100 S.Ct. 195, 62 L.Ed.2d 126 (1979); *State ex rel. Graffagnino v. King*, 436 So.2d 559 (La.1983); *State v. Duncan*, 420 So.2d 1105 (La.1982); *State v. Moody*, 393 So.2d 1212 (La.1981). It is the role of the fact finder to weigh the respective credibility of the witnesses, and therefore, the appellate court should not second guess the credibility determinations of the triers of fact beyond the sufficiency evaluations under the *Jackson* standard of review. *See State ex rel. Graffagnino*, 436 So.2d 559 (*citing State v. Richardson*, 425 So.2d 1228 (La.1983)). In order for this Court to affirm a conviction, however, the record must reflect that the state has satisfied its burden of proving the elements of the crime beyond a reasonable doubt.

*State v. Kennerson*, 96-1518, p. 5 (La.App. 3 Cir. 5/7/97), 695 So.2d 1367, 1371.

Defendant was convicted of filing a false public record, specifically, a false absentee ballot affidavit. The relevant statute is La.R.S. 14:133, which states in part:

A. Filing false public records is the filing or depositing for record in any public office or with any public official, or the maintaining as required by law, regulation, or rule, with knowledge of its falsity, of any of the following:

. . . .

(3) Any document containing a false statement or false representation of a material fact.

Defendant argues that the evidence is insufficient to support her conviction because "[n]o signature on the ballot is forged or misrepresented" and "[t]he ballot itself contains no clause that the witnesses to the voter's signature on the ballot must sign in the presence of witnesses or vice versa." However, we note that the ballot affidavit at issue includes a certification of truth that must be signed by the voter, whose signature line is followed by the clause, "Sworn to and subscribed before me on[,]" then a few lines for a notary or registrar to sign, and below those, each of the

3

two purported witnesses' signatures appears on a line that bears the designation "witness." We find it clear that signing as a witness that a signed certification of truth was sworn to and subscribed in the signer's presence, when in fact it was not, constitutes a false representation for purposes of the statute. By filing such a document into the public record, Defendant violated the statute.

Defendant additionally cites La.Civ.Code art. 1834, which states that a failed authentic act may still be valid as an act under private signature; La.Civ.Code art. 1836, which allows a party to acknowledge his signature before a court; and La.Code Evid. art. 901, which allows a lay witness to identify handwriting in the context of admissibility. We find that the Code of Evidence article does not apply to the current analysis because admissibility is not the issue at hand. Regarding the two Civil Code articles, Defendant cites no jurisprudence applying them to La.R.S. 14:133. Additionally, we note that La.R.S. 18:1306(E)(2) requires an absentee voter to sign in the presence of two witnesses, in lieu of a notary public, and states that criminal penalties are applicable.[2] We find that La.R.S. 18:1306, as part of the Louisiana Election Code, is a more specific provision than the Civil Code articles that Defendant cites and is, therefore, controlling.

Defendant also attacks the credibility of Ms. Williams and her granddaughters, all three of whom testified that the two women who signed the ballot affidavit as

---

[2]At the time of the offense, La.R.S. 18:1306(E)(2) stated:

(2) An absentee by mail or early voting ballot envelope flap shall also contain lines for the handwritten signature of two witnesses. The voter may sign the certificate in the presence of two witnesses, who must also sign the certificate, and in such a case, the voter shall not be required to obtain the signature of a notary public, but his certificate shall be made under penalty of perjury for providing false or fraudulent information. Above the perforation and along the seal line the words "DO NOT DETACH FLAP" shall be printed.

4

witnesses were not present when Ms. Williams signed the document. She also suggests that the granddaughters "were biased and politically motivated." As noted above, it is not for an appellate court to second-guess the credibility determinations of the fact finder. We also note that Defendant does not question the credibility of the two purported witnesses to the ballot affidavit, Ms. Mason and Ms. Polk, who both testified that they did not actually witness Ms. Williams sign the ballot.

Defendant next contends that the State attempted to show that she intimidated Ms. Williams into voting for a particular candidate. However, we note that intimidation is not one of the elements of the crime charged. As previously observed, the purported "witnesses" themselves admitted that they did not actually see Ms. Williams sign the ballot affidavit.

Defendant also suggests that the State used inadmissible evidence to secure her conviction. However, a sufficiency review encompasses all of the evidence adduced at trial, both admissible and inadmissible. *Hearold*, 603 So.2d 731.

For the reasons discussed, Defendant's second assignment of error lacks merit.

**Assignment of Error No. 1**

In her first assignment of error, Defendant argues the trial court erred by denying her motion for new trial and her supplemental motion for new trial.

Defendant contends that during voir dire, the State improperly referred to a severed co-defendant, Justin Conner. However, Defendant fails to argue how any reference to Mr. Conner during voir dire prejudiced her case.

Next, Defendant argues that her trial counsel, William Yarbrough, was ineffective, pursuant to *Strickland v. Washington*, 466 U.S. 668, 104 S.Ct. 2052 (1984). The supreme court has explained the analysis as follows:

5

Under *Strickland*, for a defendant to show that he received ineffective assistance of counsel, he must show (1) "counsel's representation fell below an objective standard of reasonableness" and (2) "there is a reasonable probability that, but for counsel's unprofessional error, the result of the proceeding would have been different." *Strickland*, 466 U.S. at 687-88, 694, 104 S.Ct. 2052.

*State v. Montalban*, 00-2739, p. 5 (La. 2/26/02), 810 So.2d 1106, 1110, *cert. denied*, 537 U.S. 887, 123 S.Ct. 132 (2002).

Defendant contends that Mr. Yarbrough was impaired by illness during her trial. Although Defendant cites some record pages in support of her argument, it is difficult to tell the extent of trial counsel's illness, and to what extent, if any, it affected his performance. Therefore, we find that this argument should be relegated to the post-conviction process, in which both parties will have the opportunity to develop the record in regard to this issue. La.Code Crim.P. arts. 924, *et seq.*

Next, Defendant argues that Mr. Yarbrough was ineffective for failing to file a motion to suppress the statements of Ms. Williams, Ms. Mason, and Ms. Polk. Since there was no motion to suppress filed, however, the record was not developed as to this issue, and the testimony at trial focused on the elements of the crime. Thus, this argument should also be relegated to the post-conviction process. *See, e.g., State v. Watson*, 00-1580 (La. 5/14/02), 817 So.2d 81, and *State v. Lipscomb*, 00-2836 (La. 1/25/02), 807 So.2d 218.

Next, Defendant argues that her trial counsel was ineffective for failing to object to the admissibility of various State exhibits, including her taped statement to an investigator and a transcript of that statement. She argues that the State should have been required to lay a predicate outside the jury's presence before such exhibits were admitted. Defendant cites La.R.S. 15:451, which states: "Before what purposes [purports] to be a confession can be introduced in evidence, it must be affirmatively

6

shown that it was free and voluntary, and not made under the influence of fear, duress, intimidation, menaces, threats, inducements or promises." (Footnote omitted.) Thus, this argument raises potential issues similar to those in the previous argument, and it should be relegated to the post-conviction process for further development of the record on this issue.

Next, Defendant argues that Mr. Yarbrough was ineffective for failing to object to hearsay testimony given by a State investigator, Steven Watts, that he had determined from interviews that Defendant intimidated Ms. Williams into casting her vote for a certain candidate. We note that defense counsel did object to this testimony, albeit on a different basis than hearsay. However, even if counsel's performance was deficient in regard to this testimony, we fail to see how Defendant's case was prejudiced, given that Ms. Williams' two granddaughters later gave direct testimony to the same effect as Mr. Watts.

Defendant also argues that Mr. Yarbrough should have objected to Mr. Watts's identification of the two purported ballot witnesses' signatures. Again, Defendant does not satisfy the second prong of *Strickland*, as Ms. Mason and Ms. Polk each admitted signing the affidavit in their direct testimony.

Next, Defendant argues that Mr. Yarbrough was ineffective for failing to object to Ms. Mason's testimony that her part-time employer urged her to "tell the truth." Again, we find that this testimony was not such that it prejudiced Defendant's case for purposes of *Strickland's* second prong. Even if trial counsel erred by not objecting, there is no reasonable probability that, absent the error, the result of the trial would have been different.

7

Defendant next argues that Mr. Yarbrough was ineffective for failing to vigorously cross-examine Mr. Watts and Golda Ensminger, the registrar of voters, regarding their knowledge of voting procedures and by failing to object to the State's leading questions, which she contends occurred throughout the trial. Due to the amorphous nature of these arguments, we find that they should be relegated to the post-conviction process, in which Defendant will be able to clarify her arguments and both parties will have the opportunity to develop the record in regard to these matters.

Defendant next argues the that trial judge's illness prevented her from receiving a fair trial. For the reasons discussed earlier regarding trial counsel's alleged impairment, this argument should be relegated to the post-conviction process.

Defendant also argues that the trial court erred by denying her request to have the State's handwriting expert, Robert Foley, compare a contemporaneous signature by Ms. Williams to her purported signature on the ballot. At trial, defense counsel argued:

> **MR. YARBROUGH:**
>
> Well, the relevance is that we had Maud Williams said, "This is not my signature." We had her two granddaughters say that this was not her signature. And the Jury can make inferences that if it's not her signature, then whose signature is it? It must be false. Therefore, it must fall under that it contains a false statement or a false representation of material fact.

Later, the following colloquy occurred:

> **MR. WILSON:**
>
> Judge, if it would—I wouldn't have an objection to you giving the Jury a limiting instruction that this lady is not charged with forgery. If that will help Mr. Yarbrough out. I mean, just so they're not—I mean, it seems to be his concern that they may be thinking that this could be a forged signature. We're not going to argue that. We haven't charged this lady with that. If you want to make it easier for them you can tell

8

them that in a special instruction that this lady is not charged with forgery.

**MR. YARBROUGH:**

I think it's important to my client that if that is Maud Williams's signature that the Jury know it.

**THE COURT:**

I don't see the relevance, Mr. Yarbrough. You're still not getting to the relevant—you say it's important to your client but that is not the test for relevance. I don't see the relevance to the charge in this particular case.

**MR. YARBROUGH:**

Well, again, Your Honor, I repeat one more time. They are going under paragraph 63. "Any document containing a false statement or a false representation of material fact." And if the signature on the card is not Maud Williams's signature, then I think automatically it's—

**MR. WILSON:**

We're not going to argue that, Judge.

**THE COURT:**

I disagree. It won't be argued. So that is my ruling. The evidence is excluded. If that is the sole purpose that you seek to recall these two witnesses, then I'm not going to allow that testimony. I will allow you to proffer that testimony outside the presence of the Jury. But if that's the only reason why you are recalling those witnesses, then I'm not going to allow that testimony on the basis of relevance.

**MR. YARBROUGH:**

Then I would object and ask that my objection be noted. And I would request a proffer outside the presence of the Jury.

**THE COURT:**

So noted. We'll do the proffer once the Jury begins their deliberations so that we don't waste any court time.

9

Later, the parties orally stipulated as a proffer that Ms. Williams told Mr. Watts that the signature on S-4 was hers. We find that the trial court's ruling was correct, as the authenticity of Ms. Williams' signature was not at issue in this case.

Although the matter could be viewed as having some bearing upon the witnesses' overall credibility, if any error occurred it would be harmless. On the issue before the jury, which was whether Ms. Mason and Ms. Polk actually witnessed Ms. Williams signing the ballot affidavit, the State adduced the testimony of those three individuals as well as that of Ms. Williams' two granddaughters. In view of the strong evidence supporting the verdict, there is little likelihood that the testimony regarding Ms. Williams' signature affected the verdict.

Defendant next argues that one of the jurors, Neal, was hard of hearing and thus "appeared disabled to serve as a competent juror." She also complains that another juror, Pratt, was apparently hard of hearing and slept at some point in the trial. She also contends that a third juror, Ferguson, was biased due to familiarity with the losing candidate in the Ferriday mayoral election and with one of Ms. Williams' granddaughters.

We note that Juror Ferguson revealed that she knew one of the candidates because their daughters had gone to school together. However, she stated she had not had any personal contact with the candidate in "a couple of years" and affirmed that she could be impartial in deciding the case. The other matter upon which Defendant alleges bias is apparently not in the record, as Defendant complains she was not allowed to make a proffer on the matter. Thus, the other allegations that Ferguson was biased should be relegated to the post-conviction process.

10

Defendant's arguments regarding Jurors Neal and Pratt should also be deferred, as those issues were not raised contemporaneously as required by La.Code Crim.P. art. 841. Defendant raised the issue in her "Alternative Motion for a New Trial," in which she asserted that she had witnesses to support her arguments. At the hearing on the motions, the trial court declined to hear any witnesses. As a practical matter, the record does not present enough information to assess the merits of the claim. Therefore, Defendant's arguments regarding Jurors Neal and Pratt should be deferred to the post-conviction process.

Defendant's final argument under this assignment is that the trial court erred by overruling her objections that the State's peremptory challenges were exercised in a racially discriminatory manner, as prohibited by *Batson v. Kentucky*, 476 U.S. 79, 106 S.Ct. 1712 (1986).

The supreme court has recently discussed the structure of the *Batson* analysis:

> Under *Batson*, a defendant objecting to a peremptory challenge must first establish a prima facie case of discrimination by showing facts and relevant circumstances which raise an inference that the prosecutor used the challenges to exclude potential jurors on account of race. The burden of production then shifts to the prosecutor to come forward with a race-neutral explanation for the challenges. The explanation need not be persuasive, or even plausible, and unless a discriminatory intent is inherent in the prosecutor's explanation, the reason offered may be deemed race-neutral. The trial court then must decide whether the defendant has proved purposeful racial discrimination. The ultimate burden of persuasion remains on the defendant to prove purposeful discrimination.

*State v. Jacobs*, 99-991, p. 3 (La. 5/15/01), 803 So.2d 933, 938, *cert. denied*, 534 U.S. 1087, 122 S.Ct. 826 (2002) (citations omitted).

During voir dire, the following colloquy occurred:

11

**MR. YARBROUGH:**

[B]ut I was just mentioning that all blacks have been challenged for cause or for peremptories. And there is only one black left on the potential jury at the time the preempt was exercised on Mr. Lyles.

**THE COURT:**

All right. Well, challenges for cause are not considered under a *Batson* challenge. To grant a challenge for cause then that is not later to be considered in *Batson*.

**MR. YARBROUGH:**

At the time the final peremptory challenge was made there was only one black on the—

**THE COURT:**

All right. So your argument is that they had peremptory challenged—used a peremptory challenge on one of the two blacks who were on they jury? Is that correct?

**MR. YARBROUGH:**

I think there was only—I may be mistaken but I think there was only one remaining at that time.

**THE COURT:**

Mr. Washington and Mr. Lyles—

**MR. WILSON:**

No, it was Mr. Washington and Mr. Lyles—

**THE COURT:**

—were remaining and they exercised their peremptory challenges.

**MR. YARBROUGH:**

That's right. Mr. Washington was a perempt.

**THE COURT:**

All right. Can you tell me how that establishes a pattern?

**MR. YARBROUGH:**

There were only two left, Your Honor.

. . . .

**MR. WILSON:**

Judge, our race neutral reasons for exercising peremptory challenges as to Mr. Washington, he is a friend of the defendant. He stated that he has known Ms. [Henrietta] Williams for 20 to 25 years and it has nothing to do with his race. It's a friendly and long term relationship with the defendant that is our basis for removing him from the jury.

. . . .

**THE COURT:**

All right. The Court finds first and foremost that there has been no pattern established and I think that is the first requirement. I don't think one strike really equates, rises to the level needed to establish a *Batson* challenge. Secondarily, I agree with Mr. Wilson. Mr. Lyles did indicate—

**MR. WILSON:**

That's Mr. Washington, Judge.

**THE COURT:**

I'm sorry. Mr. Washington indicated that he had a personal relationship with the defendant of a long standing nature and so I think he has articulated a race neutral reason for striking her [sic]—using one of the peremptory challenges. So that *Batson* challenge is denied.

Defendant appears to argue that even though the State had exercised only one peremptory challenge at that point, the trial court should have found that some sort of discriminatory pattern, or equivalent discrimination, had been established. However, Defendant fails to make any challenge to the non-discriminatory reasons offered by the State. Further, the reasons given by the State were at least plausible and thus satisfy the criteria discussed in *Jacobs*. Therefore, this argument lacks merit.

13

Later, the Defense raised *Batson* in regard to two other State peremptory challenges, and the following colloquy occurred:

**MR. WILSON:**

Judge, as to Ms. Dishta, our race neutral reason for exercising a peremptory challenge was based on the fact that Ms. Dishta not only knows Justin Conner but her [sic] and her husband were married by him. So it's her familiarity with Mr. Conner, she said he has refereed basketball games at that school in which she is the principal. She knows Shirley Mason, another witness. She is also familiar with the defendant. Those are three race neutral basis [sic] for why we exercised a strike as to her. Additionally, she was struck because she is a principal. And I just, in the past, I have had bad experiences with principals before, simply because I think that they tend to be an aggressive presence in the jury room during deliberations. So those are our race neutral reasons for exercising that strike.

. . . .

**MR. YARBROUGH:**

Our objection was that on Ms. Dishta that Justin Conner is not a defendant or a witness on the case, Your Honor. My understanding is that Ms. Dishta had basically indicated that Mr. Conner [knew] she and her husband, but were not friends, had no other contact other than that.

. . . .

**MR. YARBROUGH:**

And on Ms. Parker, Ms. Parker indicated that she knew a number of the persons and as I recall there was nothing that would indicate that—she said she was not friends with Justin Conner. She did know Ms. [Henrietta] Williams, but they were in different classes. A year separated them in school. She did know one of the state's witnesses, Ms. Mason, who had been a caretaker for her daughter. But I didn't recall anything being taken that indicated any close relationship or any reason to indicate a perempt.

**THE COURT:**

All right. The Court denies the *Batson* challenge. I find that the state has set forth racially neutral grounds for exercising the peremptory challenge[s].

Given the low threshold of plausibility set forth in the jurisprudence, we find that the State's race-neutral reasons were sufficient. Therefore, this portion of the assignment lacks merit.

**Assignment of Error No. 3**

In this assignment of error, Defendant argues the trial court erred by denying her motion in arrest of judgment, in which she argued that La.R.S. 14:133 is unconstitutionally vague and overbroad. In a supplemental brief, the State argues the assignment should not be addressed because the issue was not raised below.

The relevant statute is La.Code Crim.P. art. 859, which states in part: "The court shall arrest the judgment only on one or more of the following grounds: . . . (2) The offense charged is not punishable under a valid statute. . . ." Contrary to the State's argument, it appears Defendant raised this issue below in her "Alternative Motion in Arrest of Judgment." Further, Defendant argued the issue in open court. The trial court denied Defendant relief, ruling that the issue should have been brought up on a motion to quash rather than in a motion in arrest of judgment.

As a procedural matter, we find the trial court's ruling to be incorrect, as the constitutionality of the statute apparently can be raised pursuant to a motion in arrest of judgment. *See* the brief discussion in *State v. Hookfin*, 601 So.2d 320 (La.App. 4 Cir. 1991), *appeal after remand,* 602 So.2d 757 (La.App. 4 Cir. 1992), *writ denied*, 604 So.2d 1316 (La.1992), which indicates that a motion in arrest of judgment under La.Code Crim.P. art. 859 is an appropriate vehicle for such an argument. Additionally, the official comments to Article 859 indicate that the constitutionality of a statute may be raised in this manner. *See also State v. Butler*, 331 So.2d 425 (La.1976). We will, therefore, address the merits of the claim.

The supreme court has explained:

As a general matter, a statute is presumed to be constitutional, and the burden of showing otherwise falls to the challenger. *State v. Muschkat*, 96-2922, pp. 4-5 (La.3/4/98), 706 So.2d 429, 432. Further, criminal statutes are given a genuine construction according to the fair import of their words, taken in their usual sense, in context, and with reference to the purpose for the provision. La. R.S. 14:3; *Muschkat*, 96-2922 at 4-5, 706 So.2d at 432; *State v. Griffin*, 495 So.2d 1306, 1308 (La.1986). Additionally, when the constitutionality of a statute is at issue, and under one construction it can be upheld, while under the other it cannot, a court must adopt the constitutional construction. *State v. LeCompte*, 406 So.2d 1300, 1311 (La.1981). Therefore, a court may avoid constitutional problems by adopting a narrowing construction of the statute as long as that interpretation remains consistent with the overall purpose behind the legislation. *Muschkat*, 97-2765 at 10, 706 So.2d at 434 (stating "[w]hile we recognize our duty to interpret statutes in a manner consistent with our state and federal constitutions, we may only preserve a statute by a constitutional construction provided that the saving construction is a plausible one.") (citations omitted). In addition to criminal statutes being strictly and narrowly construed, any ambiguity must be resolved in favor of the accused. *State v. Williams*, 00-1725 (La.11/28/01), 800 So.2d 790; *State v. Carr*, 99-2209 (La.5/26/00), 761 So.2d 1271.

. . . .

A statute is vague if its meaning is not clear to the average citizen or if an ordinary person of reasonable intelligence is incapable of discerning its meaning and conforming his conduct to it. *State v. Barthelemy*, 545 So.2d 531, 532-533 (La.1989); *State v. David*, 468 So.2d 1126, 1128-1129 (La.1984) [, *cert. denied*, 476 U.S. 1130, 106 S.Ct. 1998 (1986)]; *State v. Broom*, 439 So.2d 357, 359 (La.1983). Further, a statute must provide adequate standards by which guilt or innocence may be determined so that an individual's fate is not left to the unfettered discretion of law enforcement. *Muschkat*, 97-2765 at p. 6, 706 So.2d at 432 (citing *Kolender v. Lawson*, 461 U.S. 352, 358, 103 S.Ct. 1855, 1859, 75 L.Ed.2d 903 (1983)). Longstanding Louisiana law holds that "vagueness challenges to statues [sic] which do not invoke First Amendment freedoms must be examined in the light of the facts of the case . . . [a] defendant engaged in conduct clearly described in a statute cannot complain of the vagueness of the statute as applied to others . . . [a] defendant [therefore] may not establish that a statute is unconstitutionally vague by speculating about hypothetical conduct which could also be prosecuted under the same statute." *State v. Hair*, 00-2694, p. 5 (La.5/15/01), 784 So.2d 1269, 1273) (citing *State v. Boyd*, 97-0579, p. 2 (La.4/14/98), 710 So.2d 1074, 1076) ("[A] vagueness challenge to a statute must be examined in the light of the facts of the

16

case . . . and as applied to the particular defendant . . . [who] must show at trial that the statute lacks specificity as to his behavior.")).

*State v. Interiano*, 03-1760, pp. 4-6 (La. 2/13/04), 868 So.2d 9, 13-14. As the present case illustrates, La.R.S. 14:133 can have First Amendment implications; therefore, we have not applied the more case-specific standard mentioned in *Interiano*.

As noted in the sufficiency review, La.R.S. 14:133 states in part:

A. Filing false public records is the filing or depositing for record in any public office or with any public official, or the maintaining as required by law, regulation, or rule, with knowledge of its falsity, of any of the following: . . . (3) Any document containing a false statement or false representation of a material fact.

Defendant complains the statute does not define "witness," "material false representation," or "voter fraud." However, we find that whether or not the statute defines "voter fraud" is immaterial, as La.R.S. 14:133 is not a statute aimed specifically at voter fraud, but one aimed at the filing of false public documents.[3] We also find that the terms "witness" and "false representation" are of such common use that any competent adult should understand them.

In *Interiano*, the defendant had prevailed at the district level in a motion to quash, successfully arguing that the term "in the presence of" was unconstitutionally vague and overbroad. In reviewing that ruling, the supreme court stated:

However, the question remains whether mere physical presence or proximity alone satisfies the requirement that the sexual display take place "in the presence of" a child or whether a sensory awareness must accompany the physical proximity. Keeping in mind that any narrowing construction given to the statute must remain consistent with the overall purpose behind the legislation, a review of the legislative history of the statute is helpful. *Muschkat*, 97-2765 at 10, 706 So.2d at 434. Such a review shows that La. R.S. 14:81(A) is intended "to apply to behavior which falls short of intercourse [when] carried on with young children." 1942 La. Acts 43 § 81 (Official Comment). Thus, the legislative history

---

[3]By the same reasoning, *Adkins v. Huckaby*, 99-3605 (La. 2/25/00), 755 So.2d 206, cited by Defendant, is inapplicable to the present case.

shows a compelling state interest in protecting children from the physical and psychological harm that can result from sexual acts committed "upon the person" of the child and the psychological impact that having such acts committed in their presence may cause.

. . . .

Accordingly, we find that the complete definition of "presence" encompasses sensory awareness as well as physical proximity. The legal usage of the word "presence" denotes something more than being in the immediate vicinity; it is the viewing or awareness of an act that gives legal significance to the term. Such a construction is appropriate, as, in the past, Louisiana courts have interpreted "presence" in other legal contexts as encompassing more than mere physical proximity. *See, e.g., In re Succession of Smith*, 01-930 (La. 5 Cir. 1/15/02), 806 So.2d 909 [, *writ denied*, 02-633 (La. 5/3/02), 815 So.2d 105] (statutory requirement that testator must sign will in presence of two attesting witnesses and notary interpreted to mean that each witness and notary must see the testator sign). Further, such a construction serves the legislative intent of preventing the psychological harm that witnessing such sexual displays can cause.

Therefore, in this case, in furtherance of the legislative purpose of the statute, and taking the language at issue in the context of the statute as a whole, this court holds that in the absence of a physical touching upon the person of the child, La. R.S. 14:81(A) requires the knowing commission of a sexual act such that the child sees or senses that a sexual act is taking place, even if the child is not able to articulate or even comprehend what the offender is doing, for a violation to occur.

Accordingly, the trial court erred in ruling La. R.S. 14:81(A) unconstitutionally vague by essentially preempting the trier of fact's role in determining whether the child saw or sensed that a sexual act was taking place. Under a proper limiting construction, a child is "present" for purposes of La. R.S. 14:81(A) if the state can demonstrate not only the physical proximity of the child but also that the child saw or sensed the offender's actions. In the instant case, although the state has not yet provided any evidence of such sensory awareness, it remains a question of fact for a jury.

*Id.* at 15-16. Thus, the supreme court reversed the trial court and remanded the case for further proceedings.

18

In light of the supreme court's vagueness and overbreadth analysis in *Interiano*, we find that La.R.S. 14:133, which contains unambiguous terminology, passes constitutional muster. For the reasons discussed, this assignment lacks merit.

**Assignment of Error No. 4**

In this assignment, Defendant argues the trial court improperly denied her the right to make various proffers to support her claims relating to her trial counsel's alleged ineffectiveness. Defendant has chosen to intersperse the arguments on her other assignments with arguments relating to this one. We have chosen to address this assignment separately in the interest of clarity.

At the May 19, 2006 hearing on Defendant's motions in arrest of judgment, for post-verdict judgment of acquittal, and for new trial, the trial court barred Defendant's new counsel, Raymond Cannon, from calling witnesses to testify regarding her trial counsel's alleged ineffectiveness. The trial court reasoned that such a claim was not the proper subject of a motion for new trial. For the same reason, Defendant was barred from making any proffer. The trial court ultimately denied the motion partly based on such reasoning.

Some jurisprudence holds that a motion for new trial is a proper vehicle for raising the issue ineffective assistance of counsel. *See State v. King*, 41,083 (La.App. 2 Cir. 6/28/06), 935 So.2d 354. However, in addressing the denial of a motion for new trial that included claims that trial counsel was ineffective, the supreme court chose, after affirming the denial regarding some claims, to defer the remainder of the ineffective assistance of counsel claims to the post-conviction process. *State v. Brisban*, 00-3437 (La. 2/26/02), 809 So.2d 923. In light of *Brisban*, we find that Defendant's ineffective assistance of counsel claims, as well as the taking or

19

proffering of any evidence thereon, should be relegated to the post-conviction process.

**Assignment of Error No. 5**

In her final assignment of error, Defendant argues that her five-year sentence, with all but eighteen months suspended, and five years of supervised probation, is excessive. Specifically, she contends that she should not have received the maximum term of imprisonment due to her advanced age and ill health.[4]

In *State v. Barling*, 00-1241, 00-1591, p. 12 (La.App. 3 Cir. 1/31/01), 779 So.2d 1035, 1042-43, *writ denied*, 01-838 (La. 2/1/02), 808 So.2d 331 (citations omitted), this court explained:

> La. Const. art. I, § 20 guarantees that, "[n]o law shall subject any person to cruel or unusual punishment." To constitute an excessive sentence, the reviewing court must find the penalty so grossly disproportionate to the severity of the crime as to shock our sense of justice or that the sentence makes no measurable contribution to acceptable penal goals and is, therefore, nothing more than a needless imposition of pain and suffering. The trial court has wide discretion in the imposition of sentence within the statutory limits and such sentence shall not be set aside as excessive absent a manifest abuse of discretion. The relevant question is whether the trial court abused its broad sentencing discretion, not whether another sentence might have been more appropriate.

To aid in such an analysis, the courts have employed the following three-step analysis: "The court should consider three factors in reviewing a judge's sentencing discretion: 1. the nature of the crime, 2. the nature and background of the offender, and 3. the sentence imposed for similar crimes by the same court and other courts." *State v. Lisotta*, 98-648, p. 4 (La.App. 5 Cir. 12/16/98), 726 So.2d 57, 58, *writ denied*, 99-433 (La. 6/25/99), 745 So.2d 1183.

---

[4]La.R.S. 14:133(C) provides: "Whoever commits the crime of filing false public records shall be imprisoned for not more than five years with or without hard labor or shall be fined not more than five thousand dollars, or both."

In the present case, we note that the crime is non-violent and that Defendant is a first-time offender. At the time of sentencing, Defendant was fifty-four years old and suffered from several health problems for which she was receiving disability benefits. The trial court considered Defendant's lack of a criminal record and her current health status as mitigating factors, but also expressed concern that Defendant would commit another crime of this nature during a period of a suspended sentence or probation. The trial court then sentenced Defendant to five years at hard labor with credit for time served, with all but eighteen months suspended, and five years probation upon release from incarceration, plus thirty-two hours of community service and certain costs. The trial court declined to impose a fine that would also have been authorized under La.R.S. 14:133(C).

We note that Defendant did not receive the maximum sentence under La.R.S. 14:133(C), in that the trial court did not impose a fine and suspended a substantial portion of the period of incarceration that was imposed. However, we also find that the trial court did not give adequate consideration to Defendant's age, health, and personal history by not imposing a longer period of suspension. The trial court's main concern was its fear that Defendant would commit a similar crime during a suspended sentence or probation. However, we find that this concern is adequately addressed by the five-year period of probation imposed, during which time Defendant would risk serving the entire incarceration portion of her sentence should she engage in further criminal activity. With this concern addressed, we find that, by not suspending more than eighteen months of incarceration, the trial court failed to adequately consider the mitigating factors set forth above, in particular Defendant's age and health problems. *See State v. Padgett*, 558 So.2d 593 (La.1990) (in which

21

the supreme court found that the trial court failed to consider factors mitigating against incarceration, such as the defendant's age, health, personal history, and efforts at restitution, when it sentenced a seventy-five year old offender to five years at hard labor). Finding that these factors warrant a sentence in the range of all but six months being suspended, we vacate Defendant's sentence and remand for resentencing in accordance with the views expressed herein.

Defendant also contends in this assignment that the trial court erred in imposing costs upon her. She claims that she is indigent (as her trial counsel was appointed) and that she was only able to retain counsel after trial and to post an appeal bond with help of relatives.

> [A]n indigent defendant may not be subjected to imprisonment because she is unable to pay a fine which is part of her sentence. *Bearden v. Georgia*, 461 U.S. 660, 103 S.Ct. 2064, 76 L.Ed.2d 221 (1983); *State v. Monson*, 576 So.2d 517 (La.1991). The *Monson* court, dealing with a sentence providing for a jail term in the event the defendant failed to make "restitution," transferred the application for supervisory writs to the trial court for a determination of indigency, stating that "if relator is found to be indigent, the trial court is ordered to delete only that portion of his sentence which provides for a jail term in the event of default of payment." *State v. Monson, supra* at 518. *Accord, State v. Collins*, 32,409 (La.App.2d Cir.9/22/99), 763 So.2d 618.
>
> Therefore, we remand for a hearing to determine whether defendant is actually unable to pay the fine and costs imposed. Should the trial court find that defendant is unable to pay, that portion of the sentence which imposes default time in lieu of payment shall be deleted. We note, however, that La.C.Cr.P. art. 886 permits the state to enforce collection of the amount owed in the same manner as a money judgment in a civil case. *See State v. Monson, supra; State v. Collins, supra*.

*State v. Ebarb*, 34,010, p. 3 (La.App. 2 Cir. 11/1/00), 772 So.2d 299, 301-02.

We find *Ebarb* to be persuasive, given that Defendant's indigent status is unclear from the record. Accordingly, on remand we also instruct the trial court to conduct a hearing to determine whether or not Defendant is indigent. If she is, then

22

the portion of her sentence mandating default time for failure to pay should be deleted. If she is indigent, the State's remedy would be to seek a civil judgment.

## Decree

For the above reasons, Defendant's conviction is affirmed, but her sentence is vacated, and the case is remanded for resentencing in accordance with the views expressed herein and for a hearing to determine whether or not Defendant is indigent. The case is also remanded for correction of the trial court minutes to reflect that the alternate juror was not polled and to identify which trial court judge presided over the reconsideration hearing.

**CONVICTION AFFIRMED; SENTENCE VACATED; AND REMANDED WITH INSTRUCTIONS.**