706 So.2d 429 (1998)
STATE of Louisiana
v.
Robert MUSCHKAT.
No. 96-KA-2922.
Supreme Court of Louisiana.
March 4, 1998.
Rehearing Denied April 3, 1998.
*430 Richard P. Ieyoub, Atty. Gen., Paul Carmouche, Dist. Atty., LaLeshia A. Walker, Catherine M. Estipinal, Shreveport, for Applicant.
Randall R. Robinson, Shreveport, for Respondent.
VICTORY, Justice.[*]
This matter comes to us on direct appeal from the trial court which found that the drug-traffic loitering statute, La. R.S. 40:981.4, is unconstitutionally vague and overbroad. We affirm.

FACTS AND PROCEDURAL HISTORY
On September 21, 1995, Robert Muschkat ("Muschkat") was observed by an officer of the Shreveport Police Department waiting in front of 1435 Doris Street. The officer knew that the location was a known drug trafficking area and had made numerous arrests in the vicinity. He watched as Muschkat waited in front of the house for a couple of minutes, and then saw him drive around the block and stop in front of 1438 Earl Street, an address which he also knew to be a drug house. After waiting a few more minutes, Muschkat returned to his initial location in front of 1435 Doris Street. After a few more minutes, Muschkat circled back around to 1438 Earl Street. Again, after waiting a few more minutes, he returned to 1435 Doris Street where he waited a few more minutes and then proceeded south onto St. Vincent Street. The officer and his partner followed Muschkat and watched as he picked up a man on the side of the road at the 5500 block of St. Vincent Street. Muschkat continued driving, and when he failed to signal a turn, the officers pulled him over to cite him for the traffic violation. Muschkat got out of the car and the officers conducted a safety pat-down and a visual inspection of the car. One of the officers observed an open container between the two front seats that appeared to contain alcohol.[1] Muschkat was read his Miranda rights, and during subsequent questioning by the police, admitted that he was stopping in front of the houses on Doris and Earl Streets to buy marijuana. He was arrested for violating the drug-traffic loitering statute and the open container law.
A bill of information was filed against Muschkat charging him with violating La. R.S. 40:981.4, drug-traffic loitering. Muschkat filed a motion to quash the indictment alleging that the statute is unconstitutionally vague and overbroad. The trial court took the matter under advisement, without oral argument or evidentiary hearing, and subsequently granted Muschkat's motion, holding *431 that the statue did not describe the unlawful conduct with sufficient particularity so that a person of reasonable intelligence could understand what conduct was prohibited. The trial court held that the statute was also vague because it failed to establish minimal guidelines for law enforcement. In addition, the trial court held that the statute was overbroad because the statute criminalized conduct in violation of an individual's freedom of movement. The State now appeals this ruling to this Court. La. Const. art. 5, Sec. 5(D)(1); La.C.Cr.P. art. 912(B)(1).

DISCUSSION
The drug-traffic loitering statute, La. R.S. 40:981.4, provides as follows:
A. Drug-traffic loitering is the remaining in a public place in a manner and under circumstances manifesting the purpose to engage in unlawful conduct in violation of R.S. 40:966 through 995 or R.S. 40:1031 through 1036.
B. Whoever commits the crime of drug-traffic loitering shall be fined not less than one hundred dollars nor more than one thousand dollars or imprisoned for not more than six months, or sentenced to community service not to exceed one hundred twenty hours, or any combination of all three.
C. For the purposes of this Section, the following words have the following meanings:
(1) "Drug paraphernalia" means and includes the items enumerated and described in R.S. 40:1031.
(2) "Illegal drug activity" means unlawful conduct which violates any provision of this Part or the equivalent federal statute or ordinance of any political subdivision of this state.
(3) "Known drug trafficker" means any person who has, within the knowledge of the arresting peace officer, been convicted of, or pled guilty or nolo contendere to, within the last two years in any court, illegal drug activity.
(4) "Public place" means any area generally visible to public view and includes but is not limited to streets, sidewalks, bridges, alleys, plazas, parks, driveways, parking lots, transit stations, shelters, automobiles, and buildings, including those which serve food or drink or provide entertainment, and the doorways and entrances to buildings or dwellings and the grounds enclosing them.
D. Among the circumstances which may be considered in determining whether the person is manifesting a purpose to engage in unlawful drug-related activity are that the person is:
(1) Seen by the officer to be in possession of drug paraphernalia;
(2) A known drug trafficker;
(3) Behaving in such a manner as to raise a reasonable suspicion that he is about to engage in or is engaging in unlawful drug-related activity and such activity includes any of the following actions:
(a) Acting as a "lookout."
(b) Being physically identified by an officer as a member of a criminal street gang or association, which has as its purpose illegal drug activity.
(c) Transferring small objects or packages for currency in a furtive fashion.
(d) Being in an area known for unlawful drug use and drug trafficking.
(e) Being on or in premises that have been reported to law enforcement as a place suspected of unlawful drug activity.
(f) Being within six feet of any vehicle registered to a known unlawful drug user, possessor, or seller, or a person for whom there is an outstanding warrant for a crime involving drug-related activity.
(g) Repeatedly beckoning to, stopping, or attempting to stop passersby or engaging passersby in conversation.
(h) Repeatedly stopping or attempting to stop motor vehicle operators by hailing, waving of arms, or any other bodily gesture.
(i) Circling an area in a motor vehicle and repeatedly beckoning to, contacting, or attempting to stop pedestrians.
(4) The subject of any court order, which directs the person to stay out of any specified area as a condition of release from custody, a condition of probation, parole, or *432 other supervision or any court order, in criminal or civil case involving illegal drug activity.
(5) Evicted as the result of his illegal drug activity and ordered to stay out of a specified area affected by drug-related activity.
(6) Taking flight upon the appearance of a police officer.
(7) Trying to conceal himself or any object within his possession that reasonably could be involved in an unlawful drug-related activity.
In determining the constitutionality of a statute, we must follow the basic rules of statutory construction. A statute is presumed to be constitutional, and the burden of clearly establishing unconstitutionality rests upon the party who attacks the statute. State v. Newton, 328 So.2d 110, 117 (La.1975) (cites omitted). A statute should be upheld whenever possible. State v. Griffin, 495 So.2d 1306, 1308 (La.1986). Louisiana criminal statutes must be "given genuine construction, according to the fair import of their words, taken in their usual sense, in connection with the context, and with reference to the purpose of the provision." La. R.S. 14:3.

Vagueness
The defendant challenges La. R.S. 40:981.4 as unconstitutionally vague on its face and as applied to him. Vague statutes must fall because they violate the due process clause of the United States Constitution, Amendment XIV, and the Louisiana Constitution, Art. I, Sec. 2, 13. As the United States Supreme Court has noted:
Vague laws offend several important values. First, because we assume that man is free to steer between lawful and unlawful conduct, we insist that laws give the person of ordinary intelligence a reasonable opportunity to know what is prohibited, so that he may act accordingly. Vague laws may trap the innocent by not providing fair warning. Second, if arbitrary and discriminatory enforcement is to be prevented, laws must provide explicit standards for those who apply them. A vague law impermissibly delegates basic policy matters to policemen, judges, and juries for resolution on an ad hoc and subjective basis, with the attendant dangers of arbitrary and discriminatory application. Third, but related, where a vague statute "abut[s] upon sensitive areas of First Amendment freedoms," it "operates to inhibit the exercise of [those] freedoms." Uncertain meanings inevitably lead citizens to "`steer far wider of the unlawful zone' ... than if the boundaries of the forbidden areas were clearly marked."
Grayned v. City of Rockford, 408 U.S. 104, 108-109, 92 S.Ct. 2294, 2298-2299, 33 L.Ed.2d 222 (1972) (cites omitted).
A penal statute is vague if it does not give a person of reasonable intelligence adequate notice that certain conduct is proscribed and punishable by law, and if it does not provide sufficient standards to the trier of fact by which guilt or innocence may be determined. Kolender v. Lawson, 461 U.S. 352, 358, 103 S.Ct. 1855, 1859, 75 L.Ed.2d 903 (1983); State v. Azar, 539 So.2d 1222, 1224(La.), cert. denied, 493 U.S. 823, 110 S.Ct. 82, 107 L.Ed.2d 48 (1989). The U.S. Supreme Court has recognized that the most important aspect of the vagueness doctrine is the requirement that a legislature establish minimal guidelines to govern law enforcement. Kolender v. Lawson, supra. "Where the legislature fails to provide such minimal guidelines, a criminal statute may permit `a standardless sweep [that] allows policemen, prosecutors, and juries to pursue their personal predilections.'" Id. (citing Smith v. Goguen, 415 U.S. 566, 575, 94 S.Ct. 1242, 1248, 39 L.Ed.2d 605 (1974)). Any law which essentially states that a person may stand on a public sidewalk or remain in a public place "only at the whim of any police officer of that city" carries with it an unacceptable and "ever-present potential for arbitrarily First Amendment liberties," and "bears the hallmark of a police state." Shuttlesworth v. City of Birmingham, 382 U.S. 87, 90, 86 S.Ct. 211, 213, 15 L.Ed.2d 176 (1965).
Muschkat argues that, as the list of circumstances of 40:981.4(D) is only illustrative of a violation, a person of reasonable intelligence cannot know which conduct is prohibited and which is permissible. Further, *433 he argues that the statute gives too much discretion to the police to determine which type of conduct is indicative of circumstances manifesting the purpose to engage in unlawful drug activity.
Other states have addressed these problems in considering drug-traffic loitering statutes almost identical to La. R.S. 40:981.4. In Akron v. Rowland, 67 Ohio St.3d 374, 618 N.E.2d 138 (1993), the Ohio Supreme Court struck down a drug-traffic loitering statute substantially similar to La. R.S. 40:981.4.[2] The Ohio court found that the phrase "under circumstances manifesting the purpose to engage in drug-related activity" was unduly open-ended and that the average person reading the statute could not be sure what specific acts manifest illegal activity. 618 N.E.2d at 146. "Even more disturbing, an average person who lives or works in a high-crime neighborhood could not be sure whether just standing on the street in front of his or her home or workplace might `manifest' something illegal." Id. Furthermore, the enumerated circumstances showing behavior which manifested the purpose to engage in drug-related activity were only examples of such behavior. Therefore, other behavior not listed could form the basis of an arrest and conviction. The Ohio court found this fatal to the statute because "[i]t is, of course, unlawful for a citizen to be convicted of a criminal offense not defined by a legislative enactment" and "there is nothing in the ordinance that would enable [a person] to know the dividing line between innocent loitering (for example, window shopping) and criminal loitering." Id.
The Ohio court also found that the law was vague in that it "delegates basic policy matters to policemen, judges, and juries for resolution *434 on an ad hoc and subjective basis, with the attendant dangers of arbitrary and discriminatory application" because the enumerated circumstances were extremely indefinite and police were permitted to consider other, unidentified "circumstances." Id.
Another state court has upheld a drug-traffic loitering statute by reading into the statute a specific intent requirement. City of Tacoma v. Luvene, 118 Wash.2d 826, 827 P.2d 1374 (1992); see also City of Milwaukee v. Wilson, 96 Wis.2d 11, 291 N.W.2d 452 (1980).[3]
The State argues that, like the Luvene court, we should read into the statute a specific intent requirement in order to uphold the statute. The State bases this argument on Chief Justice Calogero's concurrence in City of Baton Rouge v. Ross, 94-0695 (La.4/28/85), 654 So.2d 1311. Ross involved a Baton Rouge drug-traffic loitering ordinance which this Court found was preempted by a state statute.[4] Accordingly, the Court, in an opinion authored by Chief Justice Calogero, did not reach the issue of whether the ordinance was vague or overbroad. However, because Chief Justice Calogero felt the Court should address these constitutional issues, he wrote a separate concurrence in which he stated that the ordinance was neither vague nor overbroad because it contained a specific intent requirement in addition to an overt act.
However, there are several differences between the Baton Rouge ordinance and La. R.S. 40:981.4. While La. R.S. 40:981.4 criminalizes "remaining in a public place in a manner and under circumstances ...," the Baton Rouge ordinance specifically states:
A person is not guilty of drug-traffic loitering if he or she remains in a public place without intentionally soliciting, inducing, enticing, or procuring another to engage in unlawful conduct ...
The Baton Rouge ordinance therefore does not penalize mere presence in a public place, but requires that a person intentionally solicit, induce, entice or procure another to engage in illegal drug activity. Chief Justice Calogero emphasized that only a requirement of specific intent, rather than general intent, could save the ordinance from unconstitutionality. 654 So.2d at 1338.
While we recognize our duty to interpret statutes in a manner consistent with our state and federal constitutions, we may only preserve a statute by a constitutional construction provided that the saving construction is a plausible one. State v. Cinel, 94-0942 (La.11/30/94), 646 So.2d 309, 313, cert. den., 516 U.S. 881, 116 S.Ct. 215, 133 L.Ed.2d 146 (1995); Osborne v. Ohio, 495 U.S. 103, 110 S.Ct. 1691, 109 L.Ed.2d 98 (1990); City of Houston, Texas v. Hill, 482 U.S. 451, 107 S.Ct. 2502, 96 L.Ed.2d 398 (1987). We cannot read a specific intent requirement into La. R.S. 40:981.4 because to do so would not *435 be plausible. In fact, as found by the Ohio Supreme Court in Akron v. Rowland, "a specific intent requirement is irreconcilable with the goal of the [statute], which is to permit arrest and conviction when an individual is acting under `circumstances manifesting the purpose' to commit a drug crime." 618 N.E.2d at 144. "Acting under `circumstances manifesting' a purpose to do something is a far cry from specifically intending to do something." Id. Reading a specific intent requirement into the statute is irreconcilable with the purpose of the statute because the Legislature "clearly demonstrated its intent to permit police to make arrests based on the existence of certain `circumstances' without the necessity of proving specific intent." Id.
La. R.S. 40:981.4 does not require specific intent in addition to an overt act because under La. R.S. 40:981.4(D), intent is either shown by the overt act itself, or in certain instances, an overt act is not even required at all. See La. R.S. 40:981.4(D)(2), (D)(3)(b), (d), (e) and (f). Thus, we cannot save La. R.S. 40:981.4 by reading into it a specific intent requirement. As written, La. R.S. 40:981.4 is unconstitutionally vague because it does not give a person of reasonable intelligence adequate notice of which conduct is prohibited and which is permissible, and, most importantly, it does not establish minimal guidelines to govern law enforcement.

Overbreadth
Muschkat challenges La. R.S. 40:981.4 as overbroad in that it punishes non-criminal activity that is protected by the First, Fourteenth, and Fifth Amendments. Muschkat points out that a person could be arrested merely for being in a high drug-crime neighborhood.
"Embedded in the traditional rules governing constitutional adjudication is the principle that a person to whom a statute may constitutionally be applied will not be heard to challenge that statute on the ground that it may conceivably be applied unconstitutionally to others, in other situations not before the Court." State v. Sandifer, 95-2226 (La.9/5/96), 679 So.2d 1324, 1332 (citing Broadrick v. Oklahoma, 413 U.S. 601, 610, 93 S.Ct. 2908, 2915, 37 L.Ed.2d 830 (1973)). "A limited exception to this principle of constitutional adjudication has been carved out in the area of First Amendment concerns." Id. "Even though a statute may be constitutionally applied to the activities of a particular defendant, that defendant may challenge it on the basis of overbreadth if it is so drawn as to sweep within its ambit protected speech or expression of other persons not before the court." Id. (Citing State v. Franzone, 384 So.2d 409, 412 (La.1980)).
The State argues that an overbreadth challenge should not be considered as the activities prohibited involve conduct rather than speech. However, the First Amendment protects more than just speech, such as the right of association. The United States Supreme Court has struck down a statute as overbroad which did not involve speech, but which only prohibited people from loitering on a sidewalk. See Coates v. City of Cincinnati, 402 U.S. 611, 91 S.Ct. 1686, 29 L.Ed.2d 214 (1971); see also Papachristou v. City of Jacksonville, 405 U.S. 156, 164-165, 92 S.Ct. 839, 844-845, 31 L.Ed.2d 110 (1972) (characterizing the right to walk, stroll, or wander with no apparent purpose as an aspect of liberty within "the sensitive First Amendment area.").
Where a statute sanctions conduct rather than "pure speech," the challenger must demonstrate the statute's "substantial overbreadth" judged in relation to the statute's plainly legitimate sweep over harmful, constitutionally unprotected conduct. Broadrick, supra, 413 U.S. at 615, 93 S.Ct. at 2917-18. "The mere fact that one can conceive of some impermissible applications of a statute is not sufficient to render it susceptible to an overbreadth challenge; rather, the potentially impermissible applications of a challenged statute or ordinance must be `substantial' when compared to the activities which it may properly proscribe." Ross, 654 So.2d at 1324 (citing Members of City Council of City of Los Angeles v. Taxpayers for Vincent, 466 U.S. 789, 800, 104 S.Ct. 2118, 2126, 80 L.Ed.2d 772 (1984)). Therefore, we will consider the overbreadth challenge.
La. R.S. 40:981.4 is overbroad because it criminalizes a substantial amount of *436 constitutionally protected activities. In fact, most of the activities listed in La. R.S. 40:981.4(D)(3) are constitutionally protected activities, even though the statute provides that a person "behaving in such a manner as to raise a reasonable suspicion that he is about to engage" in such activities shows the person is manifesting the purpose to engage in unlawful drug-related activity. For example, being in an area known for unlawful drug use; being on or in premises that have been reported as places suspected of unlawful drug activity; being within six feet of a vehicle registered to a known unlawful drug user, repeatedly beckoning to, stopping, or attempting to stop passersby or engaging passersby in conversation, repeatedly stopping or attempting to stop vehicle operators by hailing, waving or arms, or any other bodily gesture, circling an area in a car and repeatedly beckoning to, contacting, or attempting to stop pedestrians, are all constitutionally protected activities. Because we cannot read a specific intent element into this statute, none of the above activities in and of themselves are criminal. La. R.S. 40:981.4 is overbroad because it attempts to criminalize these non-criminal activities.

CONCLUSION
We recognize the extent of the drug problem in Louisiana and the understandable desire of the Legislature to clear the streets of drug dealers and users. However, when a statute permits a person to stand on a public sidewalk or remain in a public place only at the whim of a police officer and tramples so substantially on constitutionally protected rights, the statute must be struck down. As written, La. R.S. 40:981.4 is unconstitutionally vague and overbroad.

DECREE
For the reasons stated herein, the judgment of the trial court is affirmed.
AFFIRMED.
NOTES
[*] Knoll, J., not on panel. Rule IV, Part 2, § 3.
[1] The officer later confirmed that the bottle contained bourbon.
[2] A.C.O. 138.26 provided as follows:

(A) No person shall loiter in or near any thoroughfare, place open to the public, or near any public or private place in a manner and under circumstances manifesting the purpose to engage in drug-related activity contrary to any of the provisions of R.S. Chapter 2925.
(B) Among the circumstances which may be considered in determining whether such purpose is manifested are:
(1) Such person is a known unlawful drug user, possessor, or seller. For purposes of this chapter, a "KNOWN UNLAWFUL DRUG USER, POSSESSOR, OR SELLER" is a person who has, within the knowledge of the arresting officer, been convicted in any court within this state of any violation involving the use, possession, or sale of any controlled substance as defined in R.C. Chapter 2925, or such person has been convicted of any violation of any of the provisions of R.C. Chapter 2925 or substantially similar laws of any political subdivision of this state or of any other state; or a person who displays physical characteristics of drug intoxication or usage, such as needle tracks, burned or calloused thumb and index fingers, underweight, or nervous and excited behavior;
(2) Such person is currently subject to a court order prohibiting his presence in a high drug activity geographic area;
(3) Such person behaves in such a manner as to raise a reasonable suspicion that he is about to engage in or is then engaged in an unlawful drug-related activity, including, by way of example only, such person acting as a lookout or hailing or stopping cars;
(4) Such person is physically identified by the officer as a member of a gang or association which has as its purpose illegal drug activity;
(5) Such person transfers small objects or packages in a furtive fashion;
(6) Such person takes flight or manifestly endeavors to conceal himself upon the appearance of a police officer;
(7) Such person manifestly endeavors to conceal any object which reasonably could be involved in an unlawful drug-related activity;
(8) Such person possesses any instrument, article, or thing whose customary or primary purpose is for the sale, administration, or use of controlled subjects [sic, substances] such as, but not limited to, crack pipes, push wires, chore boys, hand scales, hypodermic needles, razor blades, or other cutting tools;
(9) The area involved is by public repute known to be an area of unlawful drug use and trafficking;
(10) The premises involved are known to the defendant to have been reported to law enforcement as a place of drug activity pursuant to R.C. Chapter 2925;
(11) Any vehicle involved is registered to a known unlawful drug user, possessor, or seller, or a person for whom there is an outstanding warrant for a crime involving drug-related activity.
(C) If any provision of this section is held invalid, such invalidity shall not affect any other provision, or the application thereof, which can be given effect without the invalid provision or application, and to this end the provisions of this section are declared to be severable.
(D) Whoever violates this section is guilty of loitering for the purpose of engaging in drug-related activity, a misdemeanor of the fourth degree.
[3] The statute in Luvene was the same as the Ohio statute.
[4] Baton Rouge Ordinance Title 13:1055 provides in pertinent part:

(b) A person is guilty of drug-traffic loitering if he or she remains in a public place and intentionally solicits, induces, entices, or procures another to engage in unlawful conduct contrary to L.R.S. 40:966 through 40:971.1.
(c) Among the circumstances which may be considered in determining whether the person intends such prohibited conduct are that he or she:
(1) Is seen by the officer to be in possession of drug paraphernalia; or
(2) Is a known drug trafficker; or
(3) Repeatedly beckons to, stops or attempts to stop passerbys [sic], or engage passerbys [sic] in conversation; or
(4) Repeatedly stops or attempts to stop motor vehicles and repeatedly beckons to, contacts, or attempts to stop pedestrians; or
(5) Circles an area in a motor vehicle and repeatedly beckons to, contacts, or attempts to stop pedestrians; or
(6) Is the subject of any court order, which directs the person to stay out of any specified area as a condition of release from custody, a condition of probation or parole or other supervision or any court order, in a criminal or civil case involving illegal drug activity; or
(7) Has been evicted as the result of his or her illegal drug activity and ordered to stay out of a specified area affected by drug related activity.
(d) A person is not guilty of drug-traffic loitering if he or she remains in a public place without also intentionally soliciting, inducing, enticing, or procuring another to engage in unlawful conduct contrary to L.R.S. 40:966 through 40:971.1.