VICTORY, J.
| ,This case comes to us on direct appeal pursuant to La. Const, art. V, § 5(D)(1) after a district court found La. R.S. 14:126.3.1(A)(3), pertaining to the unauthorized participation in medical assistance programs, facially unconstitutional. After reviewing the record and the applicable law, we reverse the judgment of the district court and uphold the constitutionality of La. R.S. 14:126.3.1(A)(3).
FACTS AND PROCEDURAL HISTORY
On February 23, 2012, Micah Smith was charged in the 19th JDC with a violation of La. R.S. 14:126.3.1, which provides:
A. A person commits the crime of unauthorized participation in a medical assistance program when the person has been excluded by any state or federal agency under the authority of 42 U.S.C. 1320a-7, LAC 50:4165, or LAC 50:4167, and knowingly:
(1) Seeks, obtains, or maintains employment with a provider.
(2) Seeks, obtains, or maintains employment as a provider.
(3) Seeks, obtains, or retains any monies or payments derived in whole or in part from any state or federal medical assistance funds while excluded from participation in any state or federal medical assistance program.
(4) Seeks, obtains, or maintains a contract with a provider.
|2(5) Shares in the proceeds from a provider or participates in the ownership or management of a provider.
*869 B. The following definitions apply to the terms in this Section:
(1) “Exclusion” means that a state or federal oversight agency has determined that the person or provider can no longer be employed by, contract with, or have an ownership or management interest in any entity that provides services which will be billed directly or indirectly to any medical assistance program.
(2) “Medical assistance program” means any state or federally funded program paid for directly or indirectly with federal or state funds.
(8) “Oversight agency” means the state or federal agency responsible for the administration of the medical assistance program, including but not limited to Louisiana’s Department of Health and Hospitals or the United States Department of Health and Human Services, office of the inspector general.
(4) “Participation” means employment for a provider in any capacity, employment as a provider in any capacity, or obtaining any monies derived in whole or part from any medical assistance programs.
(5) “Payment” includes a payment, any portion of which is paid out of any medical assistance program funds, including but not limited to the Louisiana Medicaid Program. “Payment” also includes a payment by a contractor, subcontractor, or agent for the Louisiana Medicaid Program, or any other state or federally funded medical assistance program pursuant to a managed care program, which is operated, funded, or reimbursed by the Louisiana Medicaid Program, or any other state or federally funded medical assistance program.
(6) “Provider” means an actual provider of medical assistance or other service, including any managed care organization providing services pursuant to a managed care program operated, funded, or reimbursed by any state or federally funded medical assistance program, including but not limited to the Louisiana Medicaid Program.
C. Whoever commits the crime of unauthorized participation in medical assistance programs shall be:
(1) Imprisoned for not more than six months or fined not more than one thousand dollars, or both, when the state or federal exclusion is based on an underlying criminal conviction defined by Louisiana law as a misdemeanor, or when the exclusion is based on any reason other than a criminal conviction.
(2) Imprisoned for not more than five years with or without hard labor, or fined not less than one thousand dollars nor more thanjjtwenty thousand dollars, or both, when the exclusion is based on an underlying criminal conviction defined by Louisiana law as a felony.
Added by 2009 La. Acts. 337, eff. July 1, 2009.
Specifically, the state alleged:
On or about March 10, 2010, through and including the present, 2012, Micah Smith, defendant herein, committed the crime of Unauthorized Participation in a Medical Assistance Program in that he, after being excluded by any state or federal agency, he knowingly: Seeks, obtain, or maintains employment as a provider; Seeks, obtains, or retains any monies or payments derived in whole or in part from any state or federal medical assistance funds while excluded from participation in any state or federal medical assistance program; and Seeks, or maintains a contract with a provider in violation of La. R.S. 14:126.3.1.
The state alleges in its brief that it expects to prove at trial that Micah Smith *870 was excluded from participating in medical assistance programs through the administrative process by the Louisiana Department of Health and Hospitals (“DHH”) for various allegations of fraud and misconduct. Among other things, DHH administers the Louisiana Medicaid Program. After that exclusion, Smith continued to serve as the billing agent for Medicaid providers, despite his exclusion.[1]
On February 4, 2013, defendant filed a motion to quash in which he challenged La. R.S. 14:126.3.1(A)(4) (“Seeks, obtains, or maintains a contract with a provider”) as overbroad because it would “prohibit a substantial amount of free speech and actions which would be protected under the First Amendment.” It is apparent that this provision was intended to prevent a person who is excluded from being employed by, contracting with, or having an ownership or management interest in, any entity that provides services which will be billed to any medical assistance program, from contracting with a provider of such services in order to continue to profit thereby. However, defendant argues that it goes too far in | ^prohibiting any contractual arrangement between an excluded person and a Medicaid provider, which “can run the gamut from cutting a provider’s grass, to cleaning their home or office, to cutting their hair, or selling them insur-anee.” Therefore, defendant contended that the enactment prohibits a substantial amount of protected speech and the freedom to associate and is thus overbroad. In opposition, the state argued that contractual freedom is not constitutionally protected speech as contemplated by the overbreadth doctrine.
On April 9, 2013, defendant filed a second motion to quash in which he challenged La. R.S. 14:126.3.1(A)(3) (“Seeks, obtains, or retains any monies or payments derived in whole or in part from any state or federal medical assistance funds while excluded from participation in any state or federal medical assistance program”) as overbroad. Defendant argued that this provision “is so sweeping in its proscription that it denies a wide range of protected benefits to which a majority of Americans are entitled.” For example, defendant argued that “[a]n excluded provider would not be able to live in government subsidized housing and would not be able to obtain a home loan which was subsidized by the federal government in any way.” In opposition, the state argued that the statute is not unconstitutional because it does not affect recipients of the government benefits as those payments are not “state or federal medical assistance funds” due to the fact that they are made directly to healthcare providers.[2]
*871 |,At a hearing on July 2, 2013, the district court denied defendant’s first motion to quash but granted his second motion.[3] Because the district court ruled that La. R.S. 14:126.3.1(A)(3) is unconstitutional, the matter is directly before us pursuant to La. Const, art. V, § 5(D), under which a case is appealable to this Court if a law or ordinance has been declared unconstitutional.
DISCUSSION
The state argues that the trial court erred in finding La. R.S. 14:126.3.1(A)(3) unconstitutional on its face on the basis of overbreadth because the statute does not prohibit protected speech, The state contends that La. R.S.' 14:126.3.1 (A)(3) prohibits conduct rather than any form of expression.[4] The state 16also contends that defendant’s construc *872 tion of the statute, under which he claims a person could be denied federal benefits, is unreasonable and, regardless, even if that interpretation were proper, there is no First Amendment right (or other fundamental right) to receive government benefits. In addition, the state argues that the statute may not be invalidated because defendant’s unsupported allegations are insufficient to show his hypothesized unconstitutional applications are “real” and “substantial” in accordance with overbreadth jurisprudence. Thus, the state argues that defendant failed to show any realistic danger that a person excluded from participation in Medicaid or Medicare would not be eligible to receive benefits from those programs.[5]
“As a general matter, the First Amendment means that government has no power to restrict expression because of its message, its ideas, its subject matter, or its content.” United States v. Stevens, 559 U.S. 460, 468, 130 S.Ct. 1577, 176 L.Ed.2d 435 (2010) (citing Ashcroft v. American Civil Liberties Union, 535 U.S. 564, 573, 122 S.Ct. 1700, 152 L.Ed.2d 771 (2002)). The overbreadth doctrine applies to constitutional challenges made under the First Amendment:
| ./‘Embedded in the traditional rules governing constitutional adjudication is the principle that a person to whom a statute may constitutionally be applied will not be heard to challenge that statute on the ground that it may conceivably be applied unconstitutionally to others, in other situations not before the Court.” Broadrick v. Oklahoma, 413 U.S. 601, 610, 93 S.Ct. 2908, 2915, 37 L.Ed.2d 830, 839 (1973).
A limited exception to this principle of constitutional adjudication has been carved out in the area of First Amendment concerns. Broadrick, 413 U.S. at 611, 93 S.Ct. at 2915. Even though a statute may be constitutionally applied to the activities of a particular defendant, that defendant may challenge it on the basis of overbreadth if it is so drawn as to sweep within its ambit protected speech or expression of other persons not before the court. State v. Franzone, 384 So.2d 409, 412 (La.1980). “Litigants, therefore, are permitted to challenge a statute not because their own rights of free expression are violated, but because of a judicial prediction or assumption that the statute’s very existence may cause others not before the court to refrain from constitutionally protected speech or expression.” Broadrick, 413 U.S. at 612, 93 S.Ct. at 2916. The doctrine of overbreadth is a creature unique to the First Amendment, in particular free speech. State v. Schirmer, 93-2631, pp. 17-18 (La.11/30/94), 646 So.2d 890, 900-901. *873 Thus, overbreadth invalidation of statutes is generally inappropriate when the allegedly impermissible applications of the challenged statute affect conduct rather than speech, State v. Neal, 500 So.2d 374, „ 377 (La.1987), and especially where the conduct at issue is harmful and controlled by criminal laws. State v. Brown, 94-1290, pp. 10-11 (La.1/17/95), 648 So.2d 872, 878.
State v. Sandifer, 95-2226 (La.9/5/96), 679 So.2d 1324,1332.
The overbreadth doctrine has been described as “strong medicine,” to be used “sparingly,” and “only as a last resort.” See Broadrick, supra, 413 U.S. at 613, 93 S.Ct. 2908. “In short, there must be a realistic danger that the statute itself will significantly compromise recognized First Amendment protections of parties not before the Court for it to be facially challenged on overbreadth grounds.” Members of City Council of City of Los Angeles v. Taxpayers for Vincent, 466 U.S. 789, 801, 104 S.Ct. 2118, 2126, 80 L.Ed.2d 772 (1984). Thus, “[t]he overbreadth claimant bears the burden of demonstrating, ‘from the text of [the law] and from actual fact,’ that substantial overbreadth exists.” Virginia v. Hicks, 539 U.S. 113, 122, 123 S.Ct. 2191, 2198, 156 L.Ed.2d 148 (2003) (quoting New York [ ¡¡State Club Assn., Inc. v. City of New York, 487 U.S. 1, 14, 108 S.Ct. 2225, 2234, 101 L.Ed.2d 1 (1988)).[6] .
“In a facial challenge to the over-breadth ... of a law, a court’s first task is to determine whether the enactment reaches a substantial amount of constitutionally protected conduct.” Village of Hoffman Estates v. Flipside, Hoffman Estates, Inc., 455 U.S. 489, 494, 102 S.Ct. 1186, 1191, 71 L.Ed.2d 362 (1982). Although some academic commentators have advocated for the use of the overbreadth doctrine outside the context of the First Amendment, see, e.g., John F. Decker, Overbreadth Outside the First Amendment, 34 N.M. L.Rev. 53 (2004), Justice Scalia recently reiterated that “ ‘[t]he fact that [a law] might operate unconstitutionally under some conceivable set of circumstances is insufficient to render it wholly invalid, since [the Stipreme Court has] not recognized an ‘overbreadth’ doctrine outside the limited context of the First Amendment’ ” Arizona v. United States, 567 U.S.-,-, 132 S.Ct. 2492, 2515, 183 L.Ed.2d 351 (2012) (Scalia, J., dissenting) (quoting United States v. Salerno, 481 U.S. 739, 745, 107 S.Ct. 2095, 2100, 95 L.Ed.2d 697 (1987)) (emphasis added).[7] *874 See also Schall v. Martin, 467 U.S, 263, 268 n. 18,104 S.Ct. 2403, 2412, 81 L.Ed.2d 207 | ¡,(1984) (“[0]utside the limited First Amendment context, a criminal statute may not be attacked as overbroad”); Nevada Com’n on Ethics v. Carrigan, — U.S. -, 131 S.Ct. 2343, 2347, 180 L.Ed.2d 150 (2011) (“The First Amendment has no application when what is restricted is not protected speech”). Finally, the United States Supreme Court has held that “[r]arely if ever will an overbreadth challenge succeed against a law or regulation that is not specifically addressed to speech or to conduct necessarily associated with speech (such as picketing or demonstrating).” Virginia v. Hicks, supra, 539 U.S. at 124,123 S.Ct. 2191.
With that background, and as stated above in Sandifer, this Court has found that overbreadth invalidation of statutes is generally inappropriate where statutes prohibit conduct rather than speech, especially where the conduct at issue is harmful or criminal. See also State v. Neal, 500 So.2d 374 (La.1987) (statutes prohibiting solicitation of prostitution and solicitation of crime against nature not unconstitutionally overbroad as they affect conduct rather than speech); State v. Brown, 94-1290 (La.1/17/95), 648 So.2d 872 (statute which enhances penalties for persons convicted of distributing narcotics within 1,000 feet of school property not unconstitutionally overbroad as the statute affects conduct rather than speech and the conduct is illegal); State v. Greco, 583 So.2d 825 (La.1991) (statute prohibiting commercial purchase of fish from a person who does not possess a valid fishing license not subject to overbreadth analysis). Defendant points to State v. Muschkat, 96-2922 (La.3/4/98), 706 So.2d 429, wherein this Court found a statute criminalizing certain conduct to be overbroad. The statute in Muschkat was a drug-traffic loitering statute, La. R.S. 40:981.4, under which a person could be arrested for merely being in a high-crime neighborhood. In Muschkat, we recognized that “the First Amendment protects more than just speech, such as the right of association,” 706 So.2d at 435, citing to Coates v. City of Cincinnati, 402 U.S. 611, 91 S.Ct. 1686, 29 L.Ed.2d 214 (1971), where the United States Supreme | inCourt had struck down a statute which prohibited people from loitering on a sidewalk as overbroad. We found the statute to be overbroad because it criminalized a substantial amount of constitutionally protected activities, such as: being in an area known for unlawful drug use; being on premises that have been reported as places suspected of unlawful drug activity; being within six feet of a vehicle registered to a known unlawful drug user; repeatedly beckoning to, stopping, or attempting to stop passersby or engaging passersby in conversation; repeatedly stopping or attempting to stop vehicle operators by hailing, waving of arms, or any other bodily gesture; and circling an area in a car and repeatedly beckoning to, contacting, or attempting to stop pedestrians. 706 So.2d at 436. Contrary to the statute at issue in Muschkat, the statute at issue here does not criminalize any constitutionally protected activities, and has nothing to do with the right to assemble. We find the Muschkat case to be clearly distinguishable.
Pursuant to the above line of cases, prohibiting defendant from serving 2597, 147 L.Ed.2d 743 (2000)), and legislation under Section 5 of the Fourteenth Amendment {City of Boeme v. Flores, 521 U.S. 507, 532-535, 117 S.Ct. 2157, 138 L.Ed.2d 624(1997)). Id. *875 as the billing agent for Medicaid providers, after being excluded from doing so because of allegations of past fraud and misconduct, is not the type of conduct that the United States Supreme Court, or this Court, has ever recognized as conduct protected by the First Amendment. Further, assuming for the sake of argument that district court’s interpretation of the statute is correct and defendant could be prevented from obtaining Medicaid or Medicare benefits, the overbreadth argument still fails because the First Amendment is not implicated in the receipt of those types of government benefits. Although, as noted above, there has been some slight extension of the overbreadth doctrine into areas implicating other fundamental constitutionally-protected rights, “[t]he receipt of Medicare benefits has never been held to be a fundamental right.” Arruejo v. Thompson, 2001 WL 1563699 *16 (E.D.N.Y.2001). See also Lavine v. Milne, 424 U.S. 577, 584 n. 9, 96 S.Ct. 1010, 1015, 47 L.Ed.2d 249 (1976) (“Welfare benefits are not a | T1 fundamental right, and neither the State nor Federal Government is under any sort of constitutional obligation to guarantee minimum levels of support”); Rivers v. Schweiker, 684 F.2d 1144, 1157-58 (5th Cir.1982) (“This complaint of a violation of Rivers’ right to substantive due process is cognizable only if this claim for social security benefits involves an assertion of a fundamental right.... Rivers points to no authority which would support application of this theory of substantive due process to her claim.”). This conclusion is consistent with the only reported appellate decision to consider whether a state Medicaid fraud statute should be voided for overbreadth. In State v. Vogel-song, 82 Ohio App.3d 354, 612 N.E.2d 462 (1992), a pharmacist appealed his conviction of Medicaid fraud in violation of R.C. 2913.40(B). The intermediate appellate court quickly rejected defendant’s contention that the statute, which provided that “No person shall knowingly make or cause to be made a false or misleading statement or representation for use in obtaining reimbursement from the medical assistance program,” is overbroad:
[T]he overbreadth doctrine applies only to First Amendment and other fundamental right issues and has no application to statutes such as the one in question prohibiting Medicaid fraud. See paragraph three of the syllabus of Cincinnati v. Hoffman (1972), 31 Ohio St.2d 163, 60 0.0.2d 117, 285 N.E.2d 714. In other words, even though application of the statute might be unconstitutional with respect to persons making innocent false or misleading statements in connection with Medicaid reimbursement without intent to gain any advantage thereby, defendants are not entitled to rely upon that issue so long as the statute is not unconstitutional as applied to them. See, .also, State v. Van Dyne (1985), 26 Ohio App.3d 95, 26 OBR 270, 498 N.E.2d 221; and State v. Loless (1986), 31 Ohio App.3d 5, 31 OBR 19, 507 N.E.2d 1140.
Vogelsang, 82 Ohio App.3d at 362, 612 N.E.2d at 467-68.
CONCLUSION
The overbreadth doctrine is “strong medicine” to be used “sparingly” and “only as a last resort.” The overbreath argument fails here no matter how La. R.S. 14:126.3.1(A)(3) is interpreted because the statute does not reach “a substantial amount of constitutionally protected conduct.” The First Amendment does not 112protect the conduct the statute clearly intends to prohibit, i.e., prohibiting defendant from serving as a billing agent for Medicaid providers after being excluded from doing so because of past fraud or misconduct. Nor is the First Amendment *876 implicated in the receipt of Medicaid or Medicare benefits.
DECREE
For the reasons stated above, we reverse the district court ruling which found La. R.S. 14:126.3.1(A)(3) unconstitutional and remand the matter to the district court for further proceedings.
REVERSED AND REMANDED.

. The state alleges that it has also charged defendant separately with seven counts of Medicaid fraud in violation of La. R.S. 14:70.1 and one count of filing or maintaining false records in violation of La. R.S. 14:133.

. The state’s response was brief and is reproduced entirely as follows:
The defendant has filed this motion alleging that subpart (3) of 14:126.3.1 will prohibit deserving recipients of Medicaid and social security benefits from receiving those benefits. Subpart (3) punishes one who "seeks, obtains, or retains any monies or payments derived in whole or in part from any state or federal medical assistance funds while excluded from participation in any state or federal medical assistance program.” The defendant is inaccurate in his assertions.
Medicaid and Medicare recipients do not receive payments. Payments for their health benefits are made directly to providers. This statute will not affect the Medicaid or Medicare benefits of excluded persons.
Social Security benefits are not "medical assistance funds”. "Medical assistance funds” are a subset of the social security program. Banning one from those funds does not ban them from Social Security benefits. A review of Title 42 of the Code of *871 Federal Regulations show that the different programs are in different chapters.

. The state alleges that writ review of the denial of defendant's first motion to quash is pending in the court of appeal.

. We note that the district court granted defendant’s motion to quash and that motion was based solely on overbreadth; however, the state never technically argued to the district court that overbreadth doctrine did not apply because the conduct prohibited by La. R.S. 14:126.3.1(A)(3) was not protected speech under the First Amendment. In opposing defendant's second motion to quash, the state only disputed the factual accuracy of defendant’s allegation that La. R.S. 14:126.3.1(A)(3) might prohibit someone from receiving Medicaid or Medicare benefits. Specifically, the state contended that Medicaid or Medicare providers receive the payments directly rather than through the beneficiary and therefore that beneficiary would not seek, obtain, or retain any monies or payments under the language of the statute. However, the state alleges that the opposition to the second motion to quash was intended to supplement and incorporate the arguments presented in opposition to the first motion to quash, in which the state did make this argument. The state concedes that it "neglected to bring all the relevant constitutional defenses to the trial court’s attention,” but claims that new legal arguments in defense of the constitutionality of a statute may be made on appeal.
While it is settled that a new basis for an objection may not be urged for the first time on appeal, Louisiana High School Athletics Ass’n, Inc. v. State, 12-1471 (La. 1/29/13), 107 So.3d 583, 596, Segura v. Frank, 93-1271 (La. 1/14/94), 630 So.2d 714, 725, State v. Stoltz, 358 So.2d 1249, 1250 (La. 1978), we have never refused to consider an argument made by a party defending the constitutionality of a statute after a district court has found the statute to be unconstitutional. In addition, while this Court has repeatedly cautioned the district courts against declaring a statute unconstitutional on grounds not advanced by the litigants, see, e.g., State v. Over-street, 12-1854 (La.3/19/13), 111 So.3d 308; State v. Duheart, 12-0085 (La.10/26/12), 125 So.3d 1054; State v. Camese, 11-2534 (La.9/12/12), 99 So.3d 636; State v. Bazile, 11-2201 (La. 1/24/12), 85 So.3d 1; State v. Hatton, 07-2377 (La.7/1/08), 985 So.2d 709, these decisions rest on the principle that "a judge's sua sponte declaration of unconstitutionality is a derogation of the strong presumption of constitutionality accorded legislative enactments.” Istre v. Meche, 00-1316 (La. 10/17/00), 770 So.2d 776, 779 (cites omitted). Further, though we have long held that the unconstitutionality of a statute must be specially pleaded and the grounds for the claim particularized, these procedural rules exist to afford interested parties sufficient time to brief and prepare arguments defending the constitutionality of the challenged statute. Vallo v. Gayle Oil Co., Inc., 94-1238 (La. 11/30/94), 646 So.2d 859, 865. This opportunity to fully brief and argue the issue provides the trial court with thoughtful and complete arguments relative to the issue of constitutionality and furnishes reviewing courts with an adequate record upon which to adjudge the constitutionality of the statute. Id. However, that principle is not implicated when the state wishes to advance additional arguments in support of the constitutionality of an enactment. This is especially true, in this case, where the defendant’s argument to the district court was that the statute was unconstitutional based on overbreadth; thus, the district court necessarily found that the conduct prohibited by La. R.S. 14:126.3.1(A)(3) was protected speech under *872 the First Amendment. Therefore, in spite of the fact that the state did not technically present this argument in the district court, in considering the correctness of the district court’s ruling, we must consider whether the conduct prohibited by La. R.S. 14:126.3.1(A)(3) is subject to an overbreadth analysis. See La. C.C.P. art. 2164 ("the appellate court shall render any judgment which is just, legal, and proper upon the record on appeal”).

. The state refers the Court to information provided online by the U.S. Dept, of Health and Human Services, Office of the Inspector General, indicating that ”[a]n exclusion affects only the ability to claim payment from these programs for items or services rendered; it does not affect the ability to receive benefits under the programs.” The state also contends that there has been no evidence presented showing that Louisiana has ever prosecuted excluded persons for merely receiving federal benefits or that a substantial number of excluded persons have not applied for federal benefits because of fear of prosecution.

. In United States v. Stevens, supra, the U.S. Supreme Court recognized several ways to mount a successful overbreadth challenge: (1) “that no set of circumstances exist under which [the statute] could be valid,” United States v. Salerno, 481 U.S. 739, 745, 107 S.Ct. 2095, 2100, 95 L.Ed.2d 697 (1987); (2) that the statute lacks “any plainly legitimate sweep,” Washington v. Glucksberg, 521 U.S. 702, 740, n. 7, 117 S.Ct. 2258, 138 L.Ed.2d 772 (1997) (Stevens, J., concurring in judgments); or (3) that a “substantial number of its applications are unconstitutional, judged in relation to the statute’s plainly legitimate sweep,” Washington State Grange v. Washington State Republican Party, 552 U.S. 442, 449, n. 6, 128 S.Ct. 1184, 170 L.Ed.2d 151 (2008). United States v. Stevens, supra, 559 U.S. at 472, 130 S.Ct. 1577.

. In 2004, the U.S. Supreme Court expressed disdain for facial overbreadth challenges as they "call for relaxing familiar requirements of standing, to allow a determination that the law would be unconstitutionally applied to different parties and different circumstances from those at hand.” Sabri v. United States, 541 U.S. 600, 609, 124 S.Ct. 1941, 158 L.Ed.2d 891 (2004). However, despite the previous clear statements from the Court that the overbreadth doctrine only applied in the First Amendment context, the Court in Sabri noted that the Court had "recognized the validity of facial attacks alleging overbreadth (though not necessarily using that term) in *874 relatively few settings,” citing cases dealing with the right to travel (Aptheker v. Secretary of State, 378 U.S. 500, 84 S.Ct. 1659, 12 L.Ed.2d 992 (1964)), abortion (Stenberg v. Carhart, 530 U.S. 914, 938-946, 120 S.Ct.